MARY E. BURKS, ET AL. *v.* D. W. STRADER.

[Abstract Kentucky Law Reporter, Vol. 6—369.]

**Exceptions to Testimony.**

> The overruling of exceptions to a party's testimony is at most but a harmless error when his cause is made out by other evidence in the case.

**Presumption in Delay in Collection of Claim.**

> Where the owner of execution debts makes no effort to collect them for more than fourteen years and repeatedly states that such debts are paid, these facts and circumstances afford strong presumptive and corroborative evidence of payment.

APPEAL FROM BOURBON CIRCUIT COURT.

November 25, 1884.

OPINION BY JUDGE HOLT:

No exception was taken by the appellant to the action of the lower court as to a continuance; and in any event it could not avail her as the statements of the affidavit as to the desired testimony were by consent treated as a deposition, while the paper therein named is in fact a part of the record.

The main and in fact the only question in this case is whether the execution debts under which appellee's land was sold had been paid.

It is unnecessary to pass upon the competency of the testimony of the appellee so far as it details conversations with the decedent, Lewis Strader, as the other evidence in the cause is in our opinion decisive of the question of payment; and if it were not so, but conflicting, we should not be inclined to disturb the judgment below, upon what is purely a question of fact. The overruling of the exceptions to the appellee's own testimony when his cause is made out by other evidence in the case did not prejudice the appellant's rights. *P. C. C. & St. L. R. Co. v. Woolley,* 12 Bush 451. We will briefly review however the facts which in our opinion confirm the conclusion reached by the lower court.

From September, 1860, until in 1874 no effort was made to collect

the judgments, and this at once strikes one as singular if they were unpaid.

Not only did Lewis Strader, who was the owner of them, and who did not die until 1867 or 1868, not attempt to collect them, but upon different occasions he repeatedly declared that they had been paid.

It is urged that the memory of the witnesses who testify to these declarations made years before, may be treacherous, and that they are related to the appellee.

While it is possible that the first may be true, there is not much testimony to sustain such an assertion, since the witnesses who so testify are more nearly related to the appellant than the appellee, or at least this is true of several of them. Two are the sons of Lewis Strader, to wit: L. F. & L. I. Strader, as well as Emma G. Marshall and Marion McKinney, testify in substance that Lewis Strader told them that the execution debts had been paid.

The question is not left however to be decided by Lewis Strader's statements alone. He and David Strader, the latter being a defendant in said executions, were the joint and equal owners of a lien debt which they enforced against the "Neal Brown land." It was bid in at the Commissioner's sale as shown by the record, by Lewis Strader alone for $400, and sale bonds executed therefor to Lewis and David Strader; but it must be presumed that the purchase was really for the benefit of both of them as afterwards the latter gave to the former an order reciting that the land had been sold for the benefit of both and that he (David Strader) had sold his interest in the land to Lewis Strader, and requesting that the deed be made to the latter. It is true the petition alleges that the land was "purchased" by Lewis Strader; but this should be construed to mean that he bid it in, as immediately following it is the statement that it was "purchased by them." We do not see any satisfactory reason for the execution of this transfer, nor what benefit David Strader thereby received, unless it was as Lewis Strader afterwards said that it was in payment of so much as was in fact due him upon the execution claims.

It is said however that this can not be so as the executions did not issue until September 27, 1860, and were not assigned to Lewis Strader until October 15, 1860, while the Brown land was sold on June 6, 1859, and the transfer by David Strader of his interest in it is dated January 7, 1860; and that it is not likely that the latter

would have paid Lewis Strader before the executions were assigned to him.

In view of the proven statements of Lewis Strader as to the object of the transfer, and the fact that the writing is dated nearly at the beginning of the new year when a mistake as to it is so apt to occur, we should be inclined to think that the written transfer although dated "January 7, 1860," was in fact executed on January 7, 1861. This inclination verges into a conclusion when we find that the transfer was filed in court on April 10, 1861, and that the Commissioner's deed made in accordance with it was presented and approved on April 12, 1861.

After its execution Lewis Strader, so far as this record shows, never claimed that the judgments were still owing, and no effort was ever made to collect them until 1874, a period of about thirteen years; and then the initiatory movement to do so seems to have been made by the appellant's husband, who was the son-in-law of Lewis Strader, deceased, and who according to one of the witnesses believed the debt had been paid, or at least stated that "he wouldn't be surprised if David Strader had settled that debt."

The attesting witness to the transfer was Lewis I. Strader, a son of Lewis Strader, deceased, and a brother of the appellant, Mary E. Burks; and his testimony sustains the claim of the appellee, that by it the sum due Lewis Strader upon the judgments was paid.

Judgment *affirmed.*

Judge Lewis not sitting.

*Leslie & Botts, E. W. Hines, for appellant.*

*Porter & Ritter, W. P. D. Bush, Finlay F. Bush, for appellees.*